Filed 10/20/25  P. v. M.B. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>M.B.,<br><br>    Defendant and Appellant. | 2d Crim. No. B340450<br>(Super. Ct. No. IJ0332C)<br>(Los Angeles County) |

M.B. appeals orders of the juvenile court sustaining the allegations in a Welfare and Institutions Code section 602 petition, declaring him a ward of the court, and ordering his physical confinement not to exceed 10 years.  We conclude that sufficient evidence supports the finding that M.B. took cellular telephones by force and fear from two victims in separate incidents and affirm.  (Pen. Code, § 211.)[1]

---

    [1] All further statutory references are to the Penal Code unless stated otherwise.

*FACTUAL AND PROCEDURAL HISTORY*
*Robbery of Blanca Navarro*

In the afternoon of May 25, 2024, Navarro was a passenger in a city bus travelling on Crenshaw Avenue in Los Angeles. She held her infant and her cellular telephone in front of her. A group of teenage boys boarded the bus "horsing around" and talking. One boy held a liquor bottle and gestured toward another boy. A boy wearing white pants then sat in the seat next to Navarro. Another teenager approached her and "snatched" her telephone. The bus soon stopped, and the teenagers ran to the rear door and left the bus. At the adjudication hearing, the prosecutor played a surveillance videotape and offered still photographs of the robbery.

*Robbery of Lesly Lopez*

In the morning of May 26, 2024, Lopez sat in a Laundromat on Crenshaw Avenue looking at videos on her cellular telephone and awaiting the completion of her laundry. Three teenage boys entered the Laundromat, snatched her telephone from her hand and ran. Lopez was frightened, her hands shook, and she cried.

Lopez's boyfriend, Rene Flores, gave chase. One of the three teenagers wore a black sweater. As the teenagers ran through the alley, they passed the telephone among themselves. As Flores chased them, he saw the face of the young man wearing a black sweater. At the adjudication hearing, he identified the man as M.B., the man who took the telephone. Flores stated: "[His] face is very present, and the fear doesn't let you forget faces." At the adjudication hearing, the prosecutor played a surveillance videotape of the robbery and offered still photographs of the robbery.

Flores had followed the teenagers to an apartment building but did not pursue them further. The telephone's location indicated that it remained at the apartment building.

Los Angeles Police Detective Kelly Edwards investigated the two robberies and obtained the surveillance videotapes. From prior contacts, including a prior arrest, he identified M.B. in the videotapes. Kelly also recognized M.B.'s distinctive gait captured in the videotapes. Police Officer Nehemia Choe testified at the adjudication hearing and identified M.B. in the videotapes and photographs based upon prior detentions and arrests.

*Adjudication and Disposition*

Following a contested hearing, the juvenile court sustained the felony allegations of two counts of second degree robbery. On August 20, 2024, the juvenile court held a disposition hearing, declared M.B. a ward of the court pursuant to Welfare and Institution Code section 602, and placed him in the custody and control of the probation officer. The court ordered that M.B. be suitably placed in an open facility for a maximum confinement not to exceed 10 years. M.B. received predisposition credit of 478 days.

M.B. appeals and contends that insufficient evidence supports the juvenile court's finding of the requisite robbery elements of force or fear. (§§ 211, 212.)

*DISCUSSION*

M.B. argues that he was denied due process of law pursuant to the federal and California constitutions because insufficient evidence supports the juvenile court's finding that he committed two counts of robbery. He asserts that the amount of force used was only that necessary to accomplish the theft of the

3

telephones.  M.B. points out that neither Navarro nor Lopez suffered any injuries or bruises from the theft.

The same standard of review governs the sufficiency of evidence in adult criminal cases and juvenile cases; we review the entire record and draw all reasonable inferences in favor of the judgment to determine whether substantial evidence supports the conviction.  (*In re A.G.* (2020) 58 Cal.App.5th 647, 653.)  We do not redetermine the weight of the evidence or issues of witness credibility.  (*In re M.S.* (2019) 32 Cal.App.5th 1177, 1185.)  Resolution of conflicts and inconsistencies in the evidence is the exclusive province of the trier of fact.  (*Ibid.*)  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. (*People v. Ghobrial* (2018) 5 Cal.5th 250, 278; *People v. Albillar* (2010) 51 Cal.4th 47, 60.)

Section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  The "taking" element of robbery has two components:  gaining possession of the victim's property and carrying it away ("asportation").  (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165.)  Asportation continues after the taking as long as the property is carried away to a place of temporary safety.  (*Ibid.*)  Thus, to support a robbery conviction, either the act of gaining possession or asportation must be accomplished by force or fear.  (*Id.* at p. 1165, fn. 8.)

The element of force required to elevate a taking to a robbery is more than the amount of force necessary to accomplish the seizing of the property. (*People v. Lopez* (2017) 8 Cal.App.5th

4

1230, 1235.)  The amount of force, however, does not require a physical assault of the victim.  (*People v. Montalvo* (2019) 36 Cal.App.5th 597, 618 [amount of force need not be great].)  The amount of force necessary to overcome the victim's resistance satisfies the force element of robbery.  (*Lopez*, at p. 1235.)

"Fear" includes fear of an unlawful injury to the person robbed.  (§ 212.)  "To establish a robbery was committed by means of fear, the prosecution 'must present evidence ". . . that the victim was in fact afraid, and that such fear allowed the crime to be accomplished." ' "  (*People v. Morehead* (2011) 191 Cal.App.4th 765, 772.)  The robber need not intend to cause the victim to experience fear, and the fear caused need not be extreme.  (*People v. Anderson* (2011) 51 Cal.4th 989, 995; *Morehead*, at p. 775.)

The element of fear may be established by evidence that the victim was deterred from preventing the theft or attempting to immediately reclaim the property.  (*People v. Flynn* (2000) 77 Cal.App.4th 766, 771 [statement of general rule].)

Here sufficient evidence and all reasonable inferences therefrom support the juvenile court's finding that M.B. committed the takings by force or fear.

The bus videotape reflects that Navarro held on to her telephone with both hands as the robber yanked it twice from her grasp.  The juvenile court judge viewed the videotape and commented that the telephone was "grabbed out of [Navarro's] hand and it was taken by force."

The Laundromat videotape reflects that Lopez and the robber appear to struggle over the telephone before it is seized.  Again, the juvenile court judge viewed the videotape and commented that the seizure was "very forceable."  The law does

not require that the victim be physically assaulted or bruised during the taking.  (*People v. Montalvo, supra,* 36 Cal.App.5th 597, 618.)

Navarro testified that she sat on the bus holding her infant in her lap when the three teenagers approached her and grabbed her telephone.  A reasonable inference from this evidence is that Navarro feared resisting the robber because she held her infant on her lap and she was outnumbered by three young men.

Lopez testified that she was frightened and shaking when approached by the teenagers, one of whom then grabbed her telephone.  She stated:  "I screamed.  I got scared.  I was shaking. . . .  I screamed, and I said, 'My cell.'"  A reasonable inference from this evidence is that Lopez's fear prevented her from fighting to reclaim her telephone.  Moreover, Flores testified that he remembered M.B.'s face clearly because "fear doesn't let you forget faces."  Flores also testified that he drove by the apartment building several days following the robbery, saw M.B. and the teenagers, but didn't stop because he "didn't want them to find out about [him] or suspect [him]."

The adjudication orders are supported by sufficient evidence.

### DISPOSITION

The orders are affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.            CODY, J.

6

Pamela M. Villanueva, Judge

Superior Court County of Los Angeles

_____

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.